GLICK *v.* DANIEL.

Opinion delivered November 2, 1931.

*Coleman & Riddick,* for appellant.

*Henry Donham* and *Martin K. Fulk,* for appellee.

McHANEY, J. Appellee sued appellant to recover a broker's commission of 5 per cent. of the sale price of certain laundry properties for procuring the signing and delivery of a contract between appellant and S. R. Morgan which contemplated a sale to a new corporation at a price of $222,500. The complaint alleged that appellant was the owner of all the capital stock of the Glick Cleaning & Laundry Company, with a plant in St. Louis and one in Fort Smith; that he contemplated the purchase of the Rose City Laundry in Little Rock; and that he desired to transfer all these properties to a new corporation; that about September 1, 1929, appellant employed him to execute a sale of the properties and to procure the execution of a contract to that end; that he brought Morgan and appellant together which resulted in the execution and delivery of the agreement between them hereinafter set out; that he was entitled to 5 per cent. of

the value of said properties as fixed in the contract as commission, in the sum of $11,075. Appellant answered denying all the allegations of the complaint, and by amendment pleaded failure to comply with the "Blue Sky" act in bar of the action. The written contract between appellant and Morgan follows:

"This instrument of writing witnesseth:

"An agreement between Joseph Glick, a resident of Fort Smith, Arkansas, and S. R. Morgan, a resident of Little Rock, Arkansas, to-wit:

"That said Joseph Glick is and or shortly will for himself and or with others, be or become the sole owner of all the assets of every kind and character of three certain laundries and cleaning plants, free and clear of any incumbrances or liabilities whatsoever, situated repectively in the cities of St. Louis, Missouri, Fort Smith, Arkansas, and Little Rock, Arkansas, which said three properties, said Joseph Glick undertakes and contracts to deliver to a corporation shortly to be caused to be brought out by the said S. R. Morgan for and in consideration of the sum of two hundred and twenty-two thousand and five hundred dollars, ($222,500) and other considerations below, to be more fully set out.

"By the payment of the sum of eighty-seven thousand and five hundred ($87,500) in cash to retire the present sundry incumbrances on the three properties, in the amounts of approximately thirty-six thousand dollars ($36,000), fourteen thousand dollars, ($14,000) and thirty-seven thousand five hundred dollars ($37,500) and the further sum of twenty-five thousand dollars ($25,000) in cash to be paid over to the said Joseph Glick, or a grand total of one hundred and twelve thousand and five hundred dollars ($112,500); and the further consideration of eleven hundred (1,100) shares, par value one hundred dollars ($100) per share, seven per cent. (7%) quarterly dividend preferred stock of the said new corporation to be caused to be brought out by the said S. R. Morgan, total consideration two hundred and twenty-two thousand and five hundred dollars ($222,500).

578

"It is contemplated and hereby agreed that said S. R. Morgan will attempt to discharge the liens and payments above referred to by use in substitution or otherwise of the notes, debentures or bonds of the new corporation to be brought out for the securities of the existing companies. This is a burden assumed by S. R. Morgan, and, in the event of his inability to arrange said indebtedness as above contemplated, then in that event he contracts and agrees herein to make the said loans himself, or cause them to be made by other banks or bankers.

"It is further agreed that the new corporation to be brought out will have an authorized issue of ten thousand (10,000) shares of no par common stock; fifty per cent. (50%) of the said common shares of stock are to go to the said Joseph Glick as additional consideration to the two hundred and twenty-two thousand and five hundred dollars ($222,500) above enumerated, and the remaining fifty per cent. (50%) of common stock is to be paid to said S. R. Morgan in consideration of his services in arranging the financing above set out, and for such further financial service as he may and will render to the said new corporation; it being the intention herein that said Joseph Glick and said S. R. Morgan will move on a fifty-fifty basis (50-50) basis in equity of the property.

"It is understood that some ten or fifteen days will be required to arrange the mechanics and the machinery for the authority of the new corporation to function in the States of Missouri and Arkansas, and the said S. R. Morgan agrees to go about expeditiously to the bringing out of the said corporation. In the meantime, it is desirable to the two parties that the sum of $............................ be at this time paid over to acquire a Little Rock unit of the properties, and the said S. R. Morgan agrees to at this time furnish the $............................to discharge the final payment due on the Little Rock unit under the agreement that should, through the possibility of uncertainties, anything arise to prevent the carrying out of this agreement in full; then he will cause the Little Rock property

to be conveyed to the nominee of the said Joseph Glick upon the return of the amount furnished by him, plus the expenses incident thereto, at any time upon the order of the said Joseph Glick prior to October 1, 1929.

"It is agreed that said S. R. Morgan is moving up to this time upon the representations, appraisals and valuations of the said Joseph Glick on the Fort Smith, Arkansas, and the St. Louis, Missouri, units of the property, and it is agreed that he is to have and is hereby allowed fifteen days from date hereof to approve or disapprove of said properties at the figure of one hundred and eighty thousand dollars ($180,000) such approval or disapproval to be in writing, by registered mail, addressed to the said Joseph Glick, Fort Smith, Arkansas, on or before midnight, September 14, 1929, such acceptance or rejection without assignment of reason or cause on the part of the said S. R. Morgan to be absolute.

"Witness our hands and seals this, the 31st day of August, 1929.

(Signed) "S. R. Morgan,
"Joe Glick."

A jury trial resulted in a verdict and judgment in appellee's favor for $1,775.

For a reversal of the judgment it is first argued that appellee's contract with appellant "is void because prohibited by the laws of Arkansas," first, by act 148 of 1929, p. 742, providing for the licensing of real estate dealers and brokers, and, second, by §§ 750 to 771, Crawford & Moses' Digest, commonly known as the "Blue Sky" act. Appellant did not plead act 148 of 1929 in bar of the action, but we think it has no application to the facts in this case. So far as shown by the evidence, no real estate was involved in the deal. Nor does the "Blue Sky" act apply, as appellee was not selling stocks, bonds or other corporate securities, nor otherwise violating that act. He brought appellant and Morgan together, who entered into the above contract, which did provide for and contemplate a sale of certain laundry plants to a corporation which Morgan would cause "to be brought out."

It is next argued that, conceding appellee was employed by appellant, he cannot recover because he failed to perform his contract. In this connection, it is said the complaint alleges he was employed to "execute" the sale of certain properties and to procure the "execution" of a certain contract; that the contract between appellant and Morgan was conditional and could not have been executed until the conditions were performed; and that this was never done and the contract never performed. We think the obvious meaning of the word "execute" as used in the complaint was to sign and make a contract for the sale of the properties. In other words, appellee was employed to procure the making and signing of a contract for the sale of the properties satisfactory to both parties, which he did. He did not make nor sign the contract himself. He was not a party to it in any way except to bring the parties together. He did not prepare it, but, on the contrary, it was prepared by Morgan's attorney, to the apparent satisfaction of appellant, who was present representing himself, and signed the contract. We do not think it necessary to determine whether the contract was valid and binding after the lapse of the time which was given him to inspect the properties and to organize a new corporation. The fact is it was performed in part by the payment by Morgan of $36,000 to complete the purchase of the Little Rock property and some $2,000 additional was advanced for other purposes, all of which was returned by appellant to Morgan in June, 1930, and the agreement canceled apparently by consent. Appellant said he considered he had a valid and binding contract, and that Morgan breached it. He said Morgan advanced only $38,000, yet he voluntarily paid back to Morgan $42,500 which is the sum Morgan claims to have advanced. Under this state of facts and, in view of the testimony of appellee that his commission was due when the contract was made, we cannot say there is no evidence to support the jury's finding that he did perform his contract.

Appellant next contends the case should be reversed for errors in the instructions and the admission of testimony. The testimony of Mr. Garner that the usual commission for services of the kind claimed by appellee is from 5 per cent. to 15 per cent. of the money obtained under the contract was admitted over appellant's objections. It is claimed that this constituted a variance and was further emphasized by the giving of appellee's instruction No. 5 to the effect that, even though the jury might find there was no contract between them for an agreed compensation, yet, if appellee performed services for appellant of such a nature as to induce the belief that the parties understood compensation was to be had, then a recovery might be had on *quantum meruit*. We think it was not error to admit the testimony and to give the instruction, but if so it was harmless. The verdict of the jury was for $1,775, which is 5 per cent. of $35,500, approximately the amount Morgan paid appellant for the balance of the purchase price of the Little Rock plant and was a finding on disputed facts that there was a contract between them for 5 per cent. of the purchase price. We cannot say that the jury's verdict was based on a *quantum meruit*, and therefore no prejudice could have or did result to appellant.

What we have already said makes it unnecessary to discuss instructions 3 and 11 requested by appellant and refused by the court and assigned as error. It appears to us that the court fully and fairly instructed the jury; that the verdict is supported by substantial testimony; and that the case must be affirmed. It is so ordered.